UNITED STATES DISTRICT COURT (1)
SOUTHERN DISTRICT OF MISSISSIPPI

DAVID PATTERSON,
Plaintiff

VS.

UNITED STATES,
Defendants

SOUTHERN DISTRICT OF MISSISSIPPI
FILED
JAN -3 2023
ARTHUR JOHNSTON
BY _____ DEPUTY

CASE NO. 3:23-cv-3-DPJ-FKB

THE FEDERAL TORT CLAIMS ACT AUTHORIZES CIVIL ACTIONS, AGAINST THE UNITED STATES FOR TORTS COMMITTED BY FEDERAL EMPLO-YEES ACTING WITHIN THE SCOPE OF THEIR EMPLOYMENT. 28 USC §1346(b); BODIN V. VAGSHENIAN, 462 F.3d 481,483 (5th CIR 2006)

## JURISDICTIONAL PREREQUISTE

As a Jurisdictional Prerequisite to bringing a lawsuit under the FTCA, A plaintiff is required to first present his claim to the appropriate federal agency. 28 USC § 2675(a); Frantz v. UNITED STATES, 29 F.3d 222,224 (5th Cir. 1994).

## Administrative Exhaustion

Plaintiff, filed the Government Standard form 95 to make the Administrative Claim. Upon reciept from the federal agency 6 months was requested in which to send Plaintiff the notice of Final decision. The reciept was due being dated as recieved on June 7th 2022 and Plaintiff to get the response before or by December 8th 2022.

Plaintiff, did not recieve a response, thus, the statute of limitations begins to run at the time the United States mails its notice of final decision, regardless of whether the claimant actually recieves the notice. Beemer v. Holder, 495 Fed. Appx 396, 400 — (5th Cir. 2012).

The agency didn't respond to Plaintiff Claim within six months and have "deemed" the claim denied under 28 U.S.C. §2675(a), therefore, Plaintiff have filed this suit under the "deeming Provision" of the FTCA based solely on the fact that the Government did not respond to his administrative complaint within 6 months. (See Exibit 1-2)

At All Times The Bureau Of Prisons Personnel Are Acting Under Federal Law

Plaintiff, contends that the B.O.P staff at Yazoo FCI, is responsible for being negligent when they "failed to use reasonable care." Also Intentional Infliction of Emotional Destress and Abuse of Process. The employees have breached (failed in) there duty to Keep Plaintiff Safe. Plaintiff Continue to being under Assault by the Federal Bureau Of Prison Staff.

The Claims for money damages due to the Personal Injury sustained in this Complaint was based on B.O.P employee's violation's of Policy and or Regulation of the Prison. They didn't exercise their own Judgment and their act's is not discretionary function.

The defendant's acted in a way that was extreme and or outrages for the Peirpose of Causing emotional distress; The Plaintiff actually suffered Severe or extreme emotional distress; and the defendant's conduct Caused the emotional distress.

Administrative Tort Claim TRT-SER-2022-06985

1. Plaintiff was on suicide watch following An incident of self-mutilation days Prior to April 25th 2022 injury. where he had suffered From a self-inflicted wound to the right lower leg.

2. He had reported he planted a foreign device in last Friday After Prison Psychologist took him off suicide watch he had placed him Just the day before. he had placed him on watch, but did not make a thorough Assessment of the Plaintiff's emotional state, or make a reasoned assessment or evaluation of the Plaintiffs suicide risk.

3. On April 25th 2022 Plaintiff being on Suicide watch was administered his morning medication as routinely by Pharmacy staff at FCC Yazoo, However he was not to obtain a self-Carry of his medication which was Unauthorize by Psychology while on suicide watch.

4. At approximately 9:30 am, As noted in Plaintiffs' Medical records, Officer Cannon witnessed Inmate take entire bottle (30 Pills) of Ibuphofen 800mg tablets. Provider Bayman Allen S. RN. writer summoned to suicide watch by officer who reported Inmate taking a bottle of Ibuprofen that was issued to him by Pharmacy staff, Inmate states that he did take all Medications in the bottle.

5. Plaintiffs' Ibuprofen ingesting was over the Prescribed overdose limits. he had to endure the ordeal for hours and was sent to the emergancy room by Ambulance not Knowing if he would live or Die.

6. Defendant's had given Obvious material that Could have resulted ultimately as a wrongful death on the Part of Prison officials. Plaintiff already being mentally unstable and self-harm was a real danger in which they "failed to use reasonable care."

7. Officer Cannon was the person in charge of supervising Plaintiff while on suicide watch. Officer Cannon was responsible for unlocking the food slot which the allowed Pharmacy staff to pass Plaintiff the self-carry 800 mg ibuprofen (30 pills).

8. Plaintiff complained and insisted that Officer Cannon contact Pharmacy to return the pills cause he knew that he may take them all as he had done years before. Psychology never approved Plaintiff to be in possession of the pills, but Cannon told Plaintiff that Pharmacy was coming back and that the Pharmacy Administrator had approved him to keep the Ibuprofen.

Administrative Tort Claim TRT-SER-2022-06982

1. After returning from the local Hospital following the overdose, Plaintiff was again placed on Suicide watch. The room was cleaned and searched upon Plaintiff entering. He was only allow to possess

a suicide smoake, Blanket and mattress.

2. At Approximately 5:00 am Plaintiff awoke Shortly after hearing a bang on his room door, when he was using the bathroom he notice a razor blade on the Floor inside his room. The officer Newman who was responsible for supervisins Plaintiff, but was asleep at the time, Plaintiff retrieved the razor and started cutting his stictles off his leg wound.

3. Plaintiff, contends that the officer Newman had awoke to seeing him with blood soaked Guaze and a razor blade. The shift Lt. was notified. Lt. Merrideth assessed the situation and informed Plaintiff to throw the material and razor out the food Slot, which Plaintiff complied. He was also instructed to lay back down and wrap toilet Paper around his ankle to stop the bleeding. Lt. merrideth then told Plaintiff that he was leavins and that he would return to see him on Tuesday. Plaintiff was never medically assessed and neglected.

4. Officer Newman Also did nothing to assist Plaintiff and pretended as if the incident never took Place. These acts of self-mutilation is prohibited according to the B.O.P Disciplinary Procedures; Code 228: Tattooing or self-Mutilation.

5. At Approximately 8:00am Officer Riley had relieved Officer Newman from his shift to supervise Plaintiff. Plaintiff immediately Informed Officer Riley of what took Place and needed medical attention. Officer Riley Complied and contacted Medical.

6. At approximately 12:12 pm on April 30, th 2022 Date reported for treatment, Encounter Provided by Jackson, N, LPN - Injury Assessment:
Where Did injury happen (Be Specific as to location): Hospital - Suicide watch.
Cause of Injury (inmates statement of how injury occurred): "I cut my self with a razor blade and left it in my leg.

7. Exam Comments 5cmx 1.5cm Open wound to right lateral lower leg, appears to be a metal object embedded in tissue of leg that inmate reports as a razor he intentionally placed to area, M.D notified, to transfer to Merit Health Central for further treatment.

8. Plaintiff, while at the emergency room was given Pain Medication and exrays. The exrays revealed the other half of the razor that Lt. Merrideth didn't retrieve, believing that Plaintiff had thrown the entire razor out the food slot.

9. Plaintiff, had to undergo a Painful operation to remove the razor from his leg also to clean and suture the wound back close. He was treated with Pain Medication and antibiotics for infection. He was then discharged and sent back to the Prison Facility Hospital suicide watch, which he successfully recovered and was released to general Population a few days later.

10. Plaintiff contends that he had not self-harmed for about Seven (7) years prior to these incidents. Defendants never wrote a disciplinary incident report 228 for the self-mutilation, therefore Defendants took all resposibillty clearing Plaintiff from any wronseful acts on his behalf.

11. FCI Yazoo was a care level one (1) facility. Plaintiff arrived at FCI Yazoo as a care two (2) mental Health inmate which was inconsistant to the level of treatment he was to recieve. After the self-harm and deteracion of his mental state, he was encreased to Care (3) mental Health, however FCI Yazoo still insisted that they could maintain him. FCC Yazoo is severely short of staff and lack the Knowledge on how to use reasonable care to Mentally Challenged inmates. The treatins Psychologist Dr. Woolard emailed Plaintiff to remind him that She was the only Psychologist to tend to the entire Complex which consist over 3,000 inmates.

(11)

12. Plaintiff requested numerous time to be placed In mental health programs, but was denied or told he was on the waiting list.

13. While on suicide watch the officials was asleep or watching a Flat Screen T.v that had been there previously, however after He continued successful self-inflicted injury the T.V. was confiscated from the officers observation booth.

14. The officials rarely acomplish the duty to write every 15 minutes the description of activety Plaintiff had during there observation shift inside the suicide log book. This log book is to be completed according to B.O.P. Policy Suicide watch routine.

15. U.S.P Yazoo has survalence cameras at there Hospital Suicide watch room, but FCI Yazoo where Plaintiff injuries happen did not have cameras and must have been remove. The cameras are vital to survalence the inmate and staff and would have revealed there neglect.

16. Plaintiff, contends that the only explination to Lt. Merrideth removing all material and razor from his possession and not reporting the injury to medical nor write and incident report, was it he either attempted to cover up a crime scene and or serious neglect by failing to take reasonable care. Because of the statement from Lt. Merrideth Quote: Now lay down on the bed and wrap toilet paper around your ankle to stop the bleeding and I'll see you tuesday, leave Plaintiff to believe that Lt. Merrideth would leave him for death.

17. Plaintiff was very upset. about the month of August he had a heated argument with Lt.— Merrideth and the Psychologist in the Lt.— Officer where Plaintiff work detail was. Plaintiff, intentionally Quoted to Lt. Merrideth: (I been sparing you for a long time. do you remember on suicide watch? You left me for dead and I didn't put your name on any of the tort claim Paper Work, You was the shift Lt that day right)?" Lt. Merrideth nodded Yes".

18. On a seperate note and for the record which Plaintiff later informed the Government that he is pursueing the act's of violations on behalf of Lt. Merrideth. Plaintiff insist that he was afraid of retaliation from the Lt's if he explained of the possession of the razor and how the situation was mishandled. Plaintiff again explain that he was on Captain Detail, so he has to work inside the department of all the Lts at FCI Yazoo.

19. Plaintiff now would like to focus back to the day he confronted Lt. Merrideth. Plaintiff contends that the Psychologist intervened, but Plaintiff was in debate with him also about his treatment at FCI Yazoo. Plaintiff asked Doctor Pardo Quote: How many care 3 inmates on this Compound besides me. Doctor Pardo responded there was none other than Plaintiff.

20. Plaintiff sought help, but was ignored, he requested safety from his self-injury threats, instead was given material to carry out his path of destruction. Plaintiff Contends

that the B.O.P is trying to allow him to injure, disable and or want him dead.

21. On Or about December 18th 2018, Plaintiff Settled out in Case No. 2:14-cv-00310-LJM-WGH against the United States, however the agreement displayed that the United States take no responsibility for the acts and omissions described in those Tort claims for personal injury.

22. Plaintiff. situation with the B.O.P is extrodinary and they are failing to take reasonable care at every stage. Plaintiff on information and belief, 70% of suicide are unintentional. Plaintiff was transferred to his current facility at FCI Talladega which again. is a care (2) mental Health Facility and he is a care (3) mental Health inmate. Plaintiff was transferred cause of a disciplinary infraction, but the punishment didn't deserve for him to get moved, but they Transferred him days before he was to recieve the December 8th dead line for the Government to respond to his Tort Claims. He was at Yazoo low, but Yazoo raised his custody to Mediem. He was properly score and it reveal Plaintiff is actually (Low) 15 points.

These officials acting "under Color of federal Law" hurt Plaintiff and acted wrongfully, negligent, assaultive behavior, abuse of Process and intentional infliction of emotional distress.

## Prayer For Relief

Wherefore, Plaintiff respectfully Pray that this Court enter Judgement:

1. Granting Plaintiff claims that the acts and omissions described herein violate his rights under the laws of the United States, and

2. Granting Plaintiff damages in the amount described in each tort against defendants. Jointly

3. Plaintiff also seeks recovery of their costs in this suit, and

4. Plaintiff, seeks a jury trial on all issues triable.

5. A TRO or Preliminary injuction ordering defendants United States B.O.P warden Bolett to have 14 days to deliver Plaintiff legal documents pertain to these claim alledge on the Torts. Defendants are attempting to hinder Plaintiff from litigating these claims, by withholding his personal property that contain all his notes, medical records eletronic emails from Plaintiff complaints to FCI Yazoo staff. This is a form of retaliation and further frustrates Plaintiff its causeing emotional infliction of destress. Plaintiff has been incarcerated for nearly 19 years and has practically his entire life savings thats being withheld at Yazoo FCI property room in R+D. He can't read his daughters mail or look at family pictures. He dont have his radio. He dont have shoes and cant afford to purchase new ones. These things is what Plaintiff look forward to when he is howing difficulty copeing and all he can do now is worry about failing to keep him self safe due to the aggreuation. Also Plaintiff has a large ulcer on the Great right toe from pressure and not howing his medical shoes from Property at Yazoo.

To send Plaintiff to a Facility that is line with his mental health Care level, the obtain needed programing, and

For the same reasons the District Court of Indiana Case No. 2:14-cv-00310-LJM-WGH requested Appearance of Civil Trial Assistance Panel ("CTAP") Counsel pursuant to represent- ation to continue until final Judgement and due to the fact Plaintiff cercumstances have not Change (ie Mental illness, Negligence On part of the United States.) See "Exibit" ("CTAP") signed by Judge.

To authorize a release from federal Prison On behalf of agreement thru settlement with the United States to recieve Community treatment. Extraodinary and compelling Circumstances.

Any additional relief this Court deems just, proper, and equitable.
I declare under pentelty of Perjury that the above information is true and correct.
Date: December 17, 2022
FCI Talladega AL               [s] David Patt
Reg # 20300-076                David Patterson